IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JAMEY RELEFORD                                                                  PLAINTIFF

v.                           Civil No. 14-2042

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, Jamey Releford, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.      Procedural Background:

Plaintiff filed her SSI application on April 7, 2011, alleging an onset date of January 28, 2010, due to migraine headaches, chronic hypertension, type II diabetes, reoccurring headaches at least twice per week, chronic hypertension, chronic sinusitis, chronic back pain, frequent loss of balance, unstable gait, stress urinary incontinence, depression, and anxiety. Tr. 189, 196-197, 227, 238-239. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 89-90. An administrative hearing was held on June 14, 2012. Tr. 58-88. Plaintiff was present and represented by counsel.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the hearing, Plaintiff was 44 years old, possessed a limited education, and had past relevant work experience as a telemarketer, receptionist, telephone answering service, sales associate, and appointment clerk. Tr. 82-83, 190, 206-214, 236.

On September 14, 2012, the ALJ found Plaintiff's degenerative joint disease of the knees and hips, insulin-dependent diabetes mellitus, spondylosis of the neck, degenerative disk disease of the lumbar spine, obesity, and depression to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 42-44. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to perform sedentary work involving simple tasks and instructions. Tr. 44. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as a charge account clerk and credit card call out clerk. Tr. 51.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 23, 2014. Tr. 1-5. Subsequently, Plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 13, 14.

**II.   Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age,

education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion:**

Of particular concern of the undersigned in the ALJ's RFC determination. The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The Court has held, however, that the ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings. *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982). And, the ALJ is required to determine her residual functional capacity (RFC), *i.e.,* the most that she was capable of doing despite the combined effects of both her severe and non-severe medically determinable impairments, 20 C.F.R. § 404.1545(a); *see Casey v. Astrue,* 503 F.3d 687, 691 n. 3 (8th Cir.2007).

The record reveals that Plaintiff suffers from depression, anxiety disorder, and personality disorder not otherwise specified. While we are quite familiar with the diagnostic criteria for depression and anxiety, the same can not be said for personality disorders. "A personality disorder is an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time, and leads to distress or impairment." American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 5, 645 (5th edition 2013). In sum, a person suffering from a personality disorder has trouble

4

"perceiving and relating to situations and people." *See* Mayo Foundation for Medical Education and Research, *Personality Disorders*, http://www.mayoclinic.org/diseases-conditions/personality-disorders/basics/definition/con-20030111 (last accessed September 12, 2014).  Patients with a personality disorder also lack insight into their condition, so they often present with complaints such as anxiety or depression, making it difficulty to accurately identify and treat their condition. Merck Manual, *Personality Disorders*, http://www.merckmanuals.com/professional/psychiatric_disorderspersonality_disorders/personality_disorders.html (last accessed September 12, 2014).

The medical evidence of record reveals as follows. On April 6, 2010, Plaintiff underwent a psychological evaluation with Dr. Robert Spray.  Plaintiff reported sleeplessness, migraines, crying spells, trouble driving, and depression. Tr. 10. She reported no history of mental health treatment, but had taken Zoloft, Paxil, and Cymbalta for depression. On examination, Plaintiff's affect was appropriate and variable. She was tearful and appeared distressed, reporting marked intrusive thoughts related to past traumatic events and instances of hitting herself in the head when upset.. Plaintiff also reported fear associated with driving due to a past motor vehicle accident, stating that she stopped often because she was afraid she might have run over someone. Dr. Spray diagnosed Plaintiff with major depression, post-traumatic stress disorder, and psychological factors affecting chronic pain.

In a Mental RFC assessment, Dr. Spray found severe limitations in Plaintiff's ability to maintain attention and concentration for extended periods of time, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform without an unreasonable number or length of rest periods, and demonstrate reliability, and marked limitations in Plaintiff's ability

to interact with supervisors, deal with work stresses, perform activities within a schedule, make simple work-related decisions, perform at a consistent pace, avoid undue constriction of interests, travel in unfamiliar places or use public transportation, behave in an emotionally stable manner, deal with the general public, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr. 247-250.  Dr. Spray found moderate limitations in Plaintiff's ability to relate to coworkers, understand, remember, and carry out detailed or complex instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, set realistic goals, make plans independently of others, respond and adjust to the use of new and unfamiliar tools and/or machines, and maintain socially appropriate behavior and adhere to basic standards of neatness, and mild limitations in Plaintiff's ability to follow work rules, function independently, remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, respond appropriately to changes in work setting or work procedures, and be aware of normal hazards and take appropriate precautions.  Tr. 13-16.

On August 8, 2011, Plaintiff underwent a mental evaluation with Dr. Kathleen Kralik. Tr. 358-368.  She complained of depression secondary to pain issues as limiting her functionality, as well as medication side effects and significant affective self-regulation issues. Plaintiff indicated that her mother had been labeled as having Munchausen by proxy issues when she was a child.  And, as a child, she reported frequent illness and/or injuries, having been the target of her mother's illness.  She also reported difficulties driving, due to her recurrent paranoia concerning the possibility of having hit someone with her car.  Dr. Kralik diagnosed Plaintiff

with pain disorder, anxiety disorder not otherwise specified, noncompliance with referrals for mental health treatment and follow-though with antidepressant treatment, factitious disorder, and personality disorder not otherwise specified. She also assessed her with a global assessment of functioning score of 35-45. Although Dr. Kralik did note the presence of some secondary gain issues related to Plaintiff's failure to seek out and follow through with treatment, she concluded that Plaintiff's capacity to carry out activities of daily living was moderately to significantly impaired, her capacity to communicate and interact in a socially adequate manner was significantly impaired, her capacity to communicate in an intelligible and effective manner was mildly impaired, and her ability to cope with the mental/cognitive demands of basic work-like tasks was moderately to significantly impaired.

The ALJ failed to include any limitations concerning Plaintiff's personality disorder in his RFC determination. And, both Drs. Spray and Kralik concluded that Plaintiff had significant limitations associated with communicating and interacting in a socially adequate manner. Accordingly, we find that remand is necessary to allow the ALJ to reconsider Plaintiff's mental impairments and reevaluate her RFC in light of her personality disorder.

**IV.   Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties**

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of September 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE